UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

NSAC, LLC,

    Plaintiff,

v.                                          Case No.: 2:22-cv-14106-CANNON/MCCABE

THE SCHOOL BOARD OF ST. LUCIE
COUNTY, FLORIDA,

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, **THE SCHOOL BOARD OF ST. LUCIE COUNTY, FLORIDA** (the "School Board"), pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and Local Rule 7.1, files its Motion to Dismiss the Complaint [DE 1] by Plaintiff, NSAC, LLC ("NSAC") on the basis this Court lacks subject matter jurisdiction.

**BACKGROUND**

NSAC, a subsidiary of T-Mobile, filed the present case on March 25, 2022, purporting to raise claims for Injunctive Relief (Count I), Specific Performance (Count II) and Declaratory Relief (Count III) based upon the School Board's alleged "Breach of Contract" by the School Board under an Educational Broadband Service Long-Term De Facto Transfer Lease Agreement ("Lease"). [DE 1 at ¶¶ 1-4]. The School Board holds two Federal Communications Commission ("FCC") licenses to use eight unique channels of radio frequency as part of the Educational Broadband Service ("EBS"). [*Id.*]. There are 20 EBS channels in any particular geographic area, which the FCC has historically licensed only to educational or non-profit entities. [*Id.* at ¶¶ 20-22].

Since 2008 the School Board has leased the excess capacity on its licensed channels to

NSAC (by way of its predecessor). [*Id.* at ¶ 2]. More recently, the excess EBS capacity has been used by NSAC, and its affiliate T-Mobile, to support 5G cellular services provided by it within St. Lucie County. [*Id.* at ¶ 23]. Specifically, the 2.5 GHZ spectrum on which EBS operates, is one of the most important components of the emerging 5G telecommunications technology. [*Id.* at ¶ 32].

Under the Lease, NSAC is granted the right to use the School Board's excess capacity in exchange for an initial fee and monthly payment. [*Id.* at ¶ 25]. Additionally, the Lease includes certain provisions governing the School Board's authority to transfer and/or sell the EBS licenses to another entity. In pertinent part, the Lease permits the School Board to negotiate and enter into any contract to assign its EBS licenses to a third party provided that: (1) the School Board provides NSAC 30-days prior notice before entering into an agreement; (2) the School Board agrees in writing to assign all of its rights and obligations under the Lease and the third party acknowledges all of NSAC's rights thereunder; (3) the assignment and assumption is in a form reasonably acceptable to NSAC; (4) the assignee is not a competing entity (as defined by the Lease); and (5) NSAC is provided a fully executed copy of the assignment upon closing. [*Id.* at ¶ 27, Exh. A §10(c)].

The Lease also grants NSAC a Right of First Refusal ("ROFR"), which requires the School Board to notify NSAC of its intent to accept a *bona fide*[1] third-party offer, and provide NSAC with certain information, including the identity of the offeror; the terms of the offer; and a true and correct copy of the term sheet or other similar then-existing documentation relating to the offer. [*Id.* at ¶ 28, Exh. A § 3(b)]. The School Board's ROFR notice to NSAC triggers NSAC's 30-day period to notify the School Board whether it will exercise the ROFR and purchase the licenses on the same terms as contained in the offer from the third party. [*Id.*]. Additionally, to the extent the

---

[1] There is no definition of the term *"bona fide"* within the Lease. Nor does the Lease require the School Board to comply with NSAC's self-imposed conditions or meet NSAC's demands with respect to further information not otherwise required by the Lease.

School Board solicits bids for the sale or assignment of its interests, the Lease grants NSAC with a no less favorable opportunity to participate in the bidding process. [*Id.* at Exh. A § 3(f)].

Effective April 27, 2020, changes in the FCC regulations allowed educational and non-profit entities, like the School Board, to sell their interests in EBS channels to non-educational companies for commercial use. [*Id.* at ¶ 31]. In light of the changes to FCC regulations, several entities have sought to acquire EBS licenses for commercial use. [*Id.* at ¶ 32]. Given the central importance of the 2.5 GHZ spectrum held by the School Board to the emerging 5G telecommunications market, the School Board's licenses have not only become very valuable, but also a potential godsend to help supplement budget shortfalls of smaller school boards. [*Id.* at ¶ 32].

The School Board has now found itself in the middle of a dispute between two commercial entities, seeking to leverage the School Board's licenses for commercial gain. Specifically, the present case was brought by NSAC based upon the School Board's alleged violation of certain provisions in the Lease with respect to a proposal to purchase the School Board's licenses by a third party, WCO Spectrum LLC ("WCO"). [*Id.* at ¶ 33].

In November of 2021, WCO offered to purchase the School Board's licenses for $6,795,000. [*Id.* at ¶ 37]. On November 19, 2021, the School Board notified NSAC that it had received an unsolicited offer from WCO to purchase the Licenses, and that the School Board may be interested in pursuing such a sale. [*Id.* at ¶ 36]. The School Board also provided T-Mobile with a copy of the offer letter, which included the purchase price, and certain information regarding WCO. [*Id.* at ¶ 37]. The November 2021 offer was never acted upon by the School Board.

WCO made a new offer in February of 2022 for $7,550,000 ("Offer"), which is at issue in this case. The School Board again provided notice of the Offer to NSAC. [*Id.* at ¶ 41]. Additionally, the School Board notified NSAC that it intended to accept the *bona-fide* Offer, unless NSAC

3

notified the School Board that it intended to exercise its ROFR. [*Id.*]. The School Board also provided NSAC with the then-existing term sheet and an affidavit from WCO that it was not a "competing entity" under the terms provided by the Lease. [*Id.* at 46]. The Lease provides that NSAC has a ROFR to match any potential offer made by third parties, along with the ability to ensure that a potential purchaser was not a Competing Entity.

Asserting, based on its unilateral conclusion, that the information obtained from WCO and presented by the School Board to NSAC was insufficient to establish whether WCO was a competitor and that its offer was not *bona fide* (as the proposal was noted as "Non-Binding"), NSAC demanded additional time to seek further information from the School Board. [*Id.* at ¶¶ 47-48]. NSAC also insisted the School Board sign a "standstill agreement," granting NSAC additional rights above and beyond those included in the Lease. [*Id.* at ¶ 51]. If the School Board failed to execute the "standstill agreement" NSAC represented that it would bring suit to enjoin the sale to WCO, seek specific performance of Section 3(f) of the Lease, and seek a declaratory determination that the time period for exercising its ROFR was extended until such time as the School Board established to NSAC's satisfaction that the WCO offer was "*bona fide.*" [*Id.* at ¶¶ 51-53]. The School Board declined to accept NSAC's position and "standstill agreement" and indicated that the ROFR time-period would expire on March 26, 2022. [*Id.* at ¶ 52]. NSAC filed this case the day before that expiration.

By letter dated May 27, 2022, WCO withdrew its Offer to the School Board. [*See* Exhibit A, attached hereto]. The School Board in turn has now given notice of the withdrawal of the ROFR notice to NSAC as there is no longer an offer from WCO capable of being accepted. [*See* Exhibit B, attached hereto].

4

## SUMMARY OF THE ARGUMENT

As a result of WCO's withdrawal of its Offer,[2] and the resulting withdrawal of the ROFR notice, there is no longer a live case or controversy for this Court to address. The parties have now returned to their presuit posture under the Lease—each with all respective rights under the Lease intact. Accordingly, any opinion from this Court as to whether an Offer was *"bona fide"* and/or was capable of being accepted, whether the Lease requires the School Board to provide additional information on a now non-existent Offer, and/or whether the ROFR expired on March 26, 2022, or should have been extended, would constitute an improper advisory opinion. Thus, this Court lacks subject matter jurisdiction, and the case should be dismissed as moot.

The Court further lacks subject matter jurisdiction over any remaining allegations in the Complaint for breach of contract premised on the past actions of the Parties—specifically any alleged improper negotiations—as NSAC cannot satisfy the jurisdictional amount in controversy requirement for the alleged negotiation of the withdrawn Offer.

## MEMORANDUM OF LAW

### Standard of Review

This Court is well versed in the standards applicable to motions to dismiss brought pursuant to Rule 12(b)(1) and 12(b)(6); as such, they are not reiterated herein.

### I. Plaintiff's Lawsuit is Moot

"A case becomes moot—and therefore no longer a 'case' or 'controversy' for purposes of Article III - 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam) (some internal quotation marks omitted). The

---

[2] Notably, it is not the action of the School Board but that of a third party, WCO, which has resulted in the present case becoming moot.

requirement that a case have an actual, ongoing controversy extends throughout the pendency of the action. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974)); *Wood v. Raffensperger,* 981 F.3d 1307, 1317-18 (11th Cir. 2020); *Troiano v. Supervisor of Elections in Palm Beach County,* 382 F.3d 1276, 1282 (11th Cir. 2004).

The Eleventh Circuit has summarized the justiciability requirement as follows:

> Justiciability is the term of art employed to give expression to this . . . limitation placed upon federal courts by the case-and-controversy doctrine. A claim is justiciable if it is definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character . . . . The justiciability doctrines define the judicial role; they determine when it is appropriate for the federal courts to review a matter and when it is necessary to defer to the other branches of government.

*United States v. Rivera*, 613 F.3d 1046, 1049-50 (11th Cir. 2010) (internal citations omitted) (finding lack of justiciability over Appellant's challenge to a finding of fact in an order, because the appeal would not remedy a tangible injury to Appellant and would not affect the government).

The mootness doctrine is among the powerful justiciability limitations that Article III places on the federal judiciary. *See Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004); *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1218 (S.D. Fla. 2017). "Plainly, if a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Coral Springs St. Sys.*, 371 F.3d at 1328. "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000). As such, a moot claim must be dismissed for lack of subject matter jurisdiction. *See Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).

Here, the crux of the dispute is the School Board's allegedly improper actions related to WCO's Offer and NSAC's rights under the Lease with respect to the withdrawn Offer. However, WCO—not a party to this case—has withdrawn the Offer. Accordingly, there is no longer any

Offer which would trigger NSAC's ROFR or implicate any of the other rights under the Lease asserted herein. Moreover, both the School Board and NSAC have returned to their respective pre-Offer positions under the Lease, and it is impossible to know whether, and if, the School Board will receive another Offer from WCO or any other entity or the terms thereof.

More specifically, Count I (Breach of Contract-Exclusivity), alleges that because the School Board "has not shown that WCO's offer is *bona fide* and thus capable of being accepted" [*Id.* at ¶ 63], NSAC requests, in pertinent part, the following relief:

    (a)    order a permanent/final injunction preventing the School Board from selling, transferring or assigning the Licenses to WCO or any of its affiliates, or unwinding any such transaction to the extent the Board already has purported to effect it;

    (b)    award NSAC compensatory damages, costs, and attorney's fees and expenses

[DE 1 at ¶ 78].

However, WCO has now withdrawn the Offer. Consequently, there is no pending ROFR notice upon which the NSAC may act. Accordingly, there is no pending transaction to enjoin, no Offer for this Court to review, and no occasion for this Court to consider whether the School Board complied with the Lease. Therefore, any consideration of the now-withdrawn Offer and whether it complied with the terms of the Lease at this juncture would be a purely academic exercise.

Count II (Breach of Contract-Right to Participate) alleges (upon information and belief) that the School Board "solicited . . . offers from WCO for the sale of the Licenses" [DE 1 at ¶ 84], the School Board has refused to share any additional information which NSAC has requested with respect to the Offer [*Id.* at ¶ 86], and the School "Board has thus failed to provide NSAC with the same opportunity as WCO to receive information with respect to WCO's offers," [*Id.* at ¶ 87], and requests, in pertinent part, the following relief:

    (a)    order specific performance by the Board of Section 3(f) of the Lease Agreement by mandating that the Board share all information requested by NSAC concerning WCO's offers; and

(b) award NSAC compensatory damages, costs, and attorney's fees.

[*Id.*] Again, however, now that WCO has withdrawn its Offer, NSAC has no further right to information or participation concerning WCO's Offer. Nor is there any right by which NSAC could claim entitlement to specific performance under the Lease. Likewise, there is no reason for this Court to construe the terms of the Lease as to what "additional assurances" or "equal participation" to which NSAC may be entitled to in the abstract, without an existing ongoing case or controversy.

Finally, as to Count III (Declaratory Judgment-ROFR), the Complaint alleges that "as a matter of law and equity, the time period during which NSAC must decide whether to exercise its ROFR does not begin running until the Board has established that the third-party offer is *bona fide* and can be accepted, which includes . . . until the Board has established that WCO is not a Competing Entity," [*Id.* at ¶ 92], and requests, in pertinent part, the following relief:

(a) the Court issue a declaratory judgment that the time period during which NSAC must notify the Board whether its ROFR will not start running, if at all, until the Court issues a final ruling determining whether the Board has established that WCO's offer is *bona fide*, which includes but is not limited to until the Board has established that WCO is not a Competing Entity; and

(b) Award NSAC attorney's fees [id]

By specifically requesting a declaration from this Court as to whether the February 22, 2022 Offer was *bona fide* and could be accepted, whether WCO was a "competing entity" at the time the Offer was submitted, and the time period in which it has to exercise its ROFR, NSAC has tied the entirety of its request for declaratory relief to its rights with respect to only the February 22, 2022, Offer. Of course, now that WCO has withdrawn the February 22, 2022, Offer there is no offer which can be accepted, and there is no need for the Court to make a declaration where there are no pending rights at stake. The Parties have returned to their respective pre-Offer positions, with all respective rights and remedies, none of which NSAC has otherwise called into question through this suit.

8

Moreover, this case does not implicate the voluntary cessation doctrine, nor is it capable of repetition, yet evading review. Initially, "[i]t has long been the rule that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *Sec'y of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992). However, this rule is not implicated where a third party—not a party to the suit—takes action which moots the underlying dispute. *Benham v. Ozark Materials River Rock, LLC*, No. 11-CV-339-JED-FHM, 2013 WL 5372316, at *6 (N.D. Okla. Sept. 24, 2013) ("this stringent voluntary cessation standard is not applied where the defendant's cessation results from the actions of a third party, such as where an agency takes enforcement action") (citing *Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 893 (10th Cir. 2008)). And, even if it were, "when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur." *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004).

Furthermore, this case is also not capable of repetition, yet evading review. "The remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." *Hall v. Sec'y Ala.*, 902 F.3d 1294, 1297 (11th Cir. 2018) (internal citations and quotation omitted). The Complaint is premised on specific facts, unique to this case—namely, the information included by the School Board with its notification of the Offer, the identity of the offeror, the status of the offeror, and the School Board's actions with respect to the Offer. Accordingly, there is no "'reasonable expectation that [NSAC will] be subjected to the same action again." *Id.* (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (dismissing case as moot and concluding claim was not capable of repetition where there was no reasonable expectation plaintiff would be subjected to same action again).

9

## II. Plaintiff's Remaining Claims (if any) Do Not Satisfy the Jurisdictional Threshold

NSAC inexplicably titles Counts I and II as "Breach of Contract" claims—claims typically reserved to seek a remedy for past wrongs, rather than to preemptively seek damages for wrongs that have not yet come to pass—while requesting relief that is wholly equitable in nature. In fact, as made clear above, the entirety of the relief requested by NSAC in the Complaint is forward looking, attempting to either prevent a transfer of the School Board's licenses (Count I), require the School Board to divulge certain information with respect to WCO's Offer (Count II), and requesting this Court issue a declaration that NSAC's ROFR with respect to WCO's Offer has not yet begun to run (Count III). Accordingly, regardless of the how NSAC has styled the Counts and its conclusory request for compensatory damages (unsupported by any factual allegations in the Complaint), all of the claims are mooted by WCO's withdrawal of the Offer.

Even if NSAC's breach of contract claims (Count I and II) sought compensation for past allegedly improper acts (they do not), this Court lacks jurisdiction to resolve those claims because they do not satisfy the jurisdictional amount in controversy, and they should therefore be dismissed. "[T]he party seeking to invoke federal jurisdiction on the basis of § 1332(a) diversity jurisdiction bears the burden of <u>proving by a preponderance of the evidence</u> that the claim on which it is basing jurisdiction meets the jurisdictional minimum as to each defendant." *Gubagoo, Inc. v. Orlando*, No. 20-CV-80122-MARRA, 2020 WL 4208043 at *5 (S.D. Fla. July 22, 2020) (emphasis in original), citing *State Farm Mut. Auto. Ins. Co. v. A & J Medical Center, Inc.*, 20 F. Supp. 3d 1363, 1367 (S.D. Fla. 2014).

Where a complaint seeks declaratory and injunctive relief, "'[t]he amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective.'" *Cox v. Slater Tools, Inc.*, No. 2:12-cv-193-FtM-37DNF, 2012 WL 12952752, at *3 (M.D. Fla. June 18, 2012) (quoting *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000)). Because NSAC's

claims are based only on indeterminate damages from a withdrawn Offer and actions related thereto, "'a conclusory allegation that the amount in controversy has been met is insufficient' to invoke this Court's diversity jurisdiction." *Gugaboo, Inc.*, 2020 WL 4208043 at *5 (quoting *Scottdale Ins. Co. v. Tamiami Gardens Dev., Inc.*, No. 11-22978, 2012 WL 13013231, *1 (S.D. Fla. Jan. 13, 2012)).

Damages in cases involving alleged violations of non-compete agreements, similar to the clauses in the Lease which NSAC alleges the School Board has breached, "can be very difficult to prove." *Gugaboo, Inc.*, *id.*(citing *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1243 (11th Cir. 2009) ("[o]ne of the reasons why injunctions are a favored remedy for breaches of restrictive covenants is that it is 'inherently difficult' to determine what damage is actually caused by the employee's breach of a restrictive covenant.")). Where there is no way by which "the Court could determine (for the purposes of calculating the amount in controversy) the extent to which Plaintiff's actions have caused Defendant to lose goodwill, market share, customers, or profits, or whether Defendant's business has otherwise suffered cognizable harm," a plaintiff cannot establish the requisite amount in controversy sufficient to confer jurisdiction on the court and the case is due to be dismissed. *Cox*, 2012 WL 12952752, at *3.

The only allegations in the Complaint which could reasonably relate to past actions are those relating to any allegedly improper negotiations by the School Board. However, to the extent these allegations are premised on past actions (if at all), vague allegations made "upon information and belief" [*see e.g.* DE 1 at ¶ 84] are "a prime example" of alleged violations of contract provisions that are "'not susceptible to an abstract fair market value.'" *Id.* at *3 (quoting *Weiner v. Tootsie Roll Indus., Inc.*, 412 Fed. Appx. 224, 227-28 (11th Cir. 2011)). For example, NSAC alleges the School Board improperly engaged in discussions with WCO and failed to provide it with sufficient information relating to WCO's offer. [DE 1 at ¶¶ 72, 84]. However, beyond

11

NSAC's conclusory assertion that the damages in this case exceed $75,000, nowhere does the Complaint allege that NSAC lost any revenue as a result of the School Board's actions, that its rights under the Lease have somehow been affected, or any other factual allegation which could exceed the jurisdictional amount in controversy in this case. The point being, any remaining allegations in the complaint, and any potential alleged damages flowing from those allegations are not "'sufficiently measurable and certain to satisfy the amount in controversy requirement.'" *Cox, id.* at *3 (quoting *Weiner*, 412 Fed. Appx. at 227-28).

Accordingly, even if this Court were to conclude that some of the allegations in the Complaint are premised on past actions and therefore not moot (there are none), the Complaint would still be subject to dismissal for lack of subject matter jurisdiction because NSAC cannot satisfy the jurisdictional amount in controversy threshold.

## **CONCLUSION**

For the reasons explained above, Defendant, **THE SCHOOL BOARD OF ST. LUCIE COUNTY, FLORIDA**, respectfully request this Court issue an Order dismissing the Complaint for Lack of Subject Matter Jurisdiction, along with such other and further relief as the Court deems appropriate.

Dated this 1st day of June, 2022.

                                              Respectfully submitted,

                                              */s/ Michael P. Spellman*
                                              **MICHAEL P. SPELLMAN**
                                              Florida Bar Number: 937975
                                              mspellman@sniffenlaw.com

                                              **SNIFFEN & SPELLMAN, P.A.**
                                              123 North Monroe Street
                                              Tallahassee, Florida 32301
                                              Telephone: (850) 205-1996
                                              Facsimile: (850) 205-3004

/s/ *John R. Eubanks, Jr.*
**JOHN R. EUBANKS, JR.**
Florida Bar Number: 897485
jeubanks@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
605 North Olive Avenue, 2nd FL
West Palm Beach, Florida 33401
Telephone: (561) 721-4000
Facsimile: (561) 721-4001

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 1st day of June, 2022, a true and correct copy of the foregoing was electronically filed in the US District Court, Southern District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ John R. Eubanks, Jr.
**JOHN R. EUBANKS, JR.**

WCO Spectrum
9355 Wilshire Boulevard
Suite 200
Beverly Hills, CA 90210
Tel 310.499.5300

WCO Spectrum
611 Pennsylvania Avenue, SE
Suite 363
Washington, DC 20003

 WCO SPECTRUM

May 27, 2022

School Board of St. Lucie County, Florida
E. Wayne Gent, Superintendent
St. Lucie Public Schools
9461 Brandywine Lane
Port St. Lucie, FL 34986

**RE: *The School Board of St. Lucie County, Florida***

Dear Mr. Gent:

Please be advised that WCO Spectrum, LLC ("WCO") hereby withdraws its February 22, 2022, offer to purchase St. Lucie's educational broadband spectrum ("EBS") licenses.

Please let me know if you have any questions or wish to discuss.

Sincerely,

Carl Katerndahl
Managing Director, WCO Spectrum, LLC

EXHIBIT A

| | |
|---|---|
| **From:** | Todd Gray <tgray@graymillerpersh.com> |
| **Sent:** | Wednesday, June 01, 2022 1:04 PM |
| **To:** | Brown, Heather |
| **Subject:** | School Board of St. Lucie County, Florida - Withdrawal of ROFR Notice |
| **Attachments:** | WCO Offer Withdrawal.pdf |

Heather:

On February 24, 2022, the School Board of St. Lucie County, Florida gave notice to NSAC LLC and T-Mobile pursuant to Section 3(b) of the School Board's Educational Broadband Service Long-Term De Facto Transfer Lease Agreement with NSAC LLC that the School Board had determined to accept a bona fide offer from WCO Spectrum LLC to purchase the WLX391 and WLX392 EBS licenses. As required by Section 3(b) of the lease, that notice offered to sell the WLX391 and WLX392 licenses to NSAC LLC or another entity designated by T-Mobile on the terms and conditions set forth in the WCO offer.

We now notify NSAC LLC and T-Mobile that, as reflected in the attachment to this email, WCO has withdrawn its offer to purchase the WLX391 and WLX392 licenses. Therefore, the School Board hereby withdraws its February 24, 2022 ROFR notice and offer to sell the WLX391 and WLX392 licenses.

Regards,

Todd

**Todd D. Gray**
Partner



GRAY
MILLER
PERSH LLP

2233 Wisconsin Avenue NW, Suite 226
Washington, DC 20007
202-776-2571
tgray@graymillerpersh.com

*This message from the law firm of Gray Miller Persh LLP may contain confidential or privileged information. If you received this transmission in error, please contact me immediately. Disclosure or use of any part of this message by persons other than the intended recipient is prohibited.*

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

1



EXHIBIT B

WCO Spectrum  
9355 Wilshire Boulevard  
Suite 200  
Beverly Hills, CA 90210  
Tel 310.499.5300

WCO Spectrum  
611 Pennsylvania Avenue, SE  
Suite 363  
Washington, DC 20003

 WCO SPECTRUM

May 27, 2022

School Board of St. Lucie County, Florida  
E. Wayne Gent, Superintendent  
St. Lucie Public Schools  
9461 Brandywine Lane  
Port St. Lucie, FL 34986

RE: *The School Board of St. Lucie County, Florida*

Dear Mr. Gent:

Please be advised that WCO Spectrum, LLC ("WCO") hereby withdraws its February 22, 2022, offer to purchase St. Lucie's educational broadband spectrum ("EBS") licenses.

Please let me know if you have any questions or wish to discuss.

Sincerely,

Carl Katerndahl  
Managing Director, WCO Spectrum, LLC